# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BLUEFIELD DIVISION

**VINCENT MICHAEL MARINO,**           )
                                       )
      **Petitioner,**                 )
                                       )
**v.**                                 )   **CIVIL ACTION NO. 1:12-0393**
                                       )
**BART MASTERS,[1] Warden,**           )
                                       )
      **Respondent.**                 )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Petitioner's Motion for Voluntary Dismissal (Document No. 9.), filed on November 25, 2014. Having thoroughly considered the Motion, the undersigned concludes that Plaintiff's Motion (Document No. 9.) should be denied and his Petition should with be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 2011, Petitioner, acting *pro se*, filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody. (Document No. 1).[2] In his Petition, Petitioner alleges that his due process rights were violated during his disciplinary action. First, Petitioner claims that DHO Officer Mr. Ryan violated his due process rights by failing to allow Petitioner to call Correctional Officer Joe Smith as a defense witness. (Id.) Second, Petitioner

---

[1] Bart Masters is the Warden at FCI McDowell. Accordingly, he is the appropriate respondent in this action. See 28 U.S.C. § 2241; *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004)(the proper respondent for a habeas petition is the petitioner's immediate custodian). Federal Rule of Civil Procedure 25(d)(1) permits substitution of parties for public officers named as parties in an action.

[2] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

contends that he requested Case Manager Mr. Lucas to at appear as his staff representative, but Mr. Lucas failed to show up at his hearing. (Id.) Third, Petitioner alleges that DHO Officer Mr. Ryan violated his due process rights by precluding Petitioner from "receiving core exculpatory material evidence at his DHO hearing proving that the critical 10 gallons of 'unknown liquid'" was not alcohol. (Id.) Petitioner explains that there was video tape evidence that the "unknown liquid" was spilled in Mohawk-B Unit. (Id.) Petitioner, therefore, argues that "unknown liquid" was not available for testing. (Id.) Fourth, Petitioner argues that his due process rights were violated because his Incident Report was untimely served in violation of 28 C.F.R. § 541.15. (Id.) Finally, Petitioner alleges that prison officials retaliated against him by manipulating his custody classification resulting in a higher security level, placing Petitioner in the "BOP's Diesel Therapy Program," and delaying a response to Petitioner's BP-11. (Id.) Therefore, Petitioner claims that his disciplinary information in his central file is inaccurate and requests that his Incident Report be expunged. (Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of his "Inmate History ADM-REL dated September 13, 2011 (Id., p. 30.); (2) A copy of Petitioner's "Male Custody Classification" dated May 8, 2006, and February, 3, 2011 (Id., pp. 31 - 32.); (3) A copy of the Incident Report dated December 3, 2009, prepared by General Maintenance Foreman David Losey (Id., p. 33.); (4) A copy of his Incident Report dated December 3, 2009, prepared by S.O. Jason Poirier (Id., p. 34.); and (5) A copy of the "Discipline Hearing Officer Report" dated December 15, 2009 (Id., pp. 35 - 37.)

By Order entered on October 6, 2014, the undersigned directed Respondent to file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 6.)

On November 6, 2014, Respondent filed his "Response To Order to Show Cause."

2

(Document No. 8.) Respondent argues that Petitioner's Petition should be denied based on the following: (1) "Petitioner received the rights afforded pursuant to Wolff" (Id., pp. 5 - 6.); (2) "The absence of the surveillance video does not require expungement" (Id., pp. 7 - 9.); (3) "There is no liberty interest in receiving an Incident Report within 24 hours" (Id., pp. 9 - 10.); (4) "There is no due process right to an administrative remedy program" (Id., pp. 10 - 11.); (5) "Plaintiff's Privacy Act claims fail" (Id., pp. 11 - 13.); (6) "Petitioner's challenge to his custody classification score" is improperly brought under Section 2241 (Id., pp. 13 - 16.); and (7) "Petitioner's additional complaints relating to his placement in SHU, transfer, and his challenge to an alleged BOP policy are not cognizable in a habeas corpus petition" (Id., p. 17.).

As Exhibits, Respondent files the following: (1) A copy of the Declaration of Sharon Wahl (Document No. 8-1.); (2) A copy of Incident Report No. 1951307 dated December 3, 2009, prepared by S.O. Jason Poirier (Document No. 8-2, pp. 2 - 3.); (3) A copy of the "Inmate Rights at Discipline Hearing Form" dated December 9, 2009 (Id., pp. 5 - 6.); (4) A copy of the 'Notice of Discipline Hearing Before the DHO" dated December 9, 2009 (Id., p. 8.); (5) A copy of the "Discipline Hearing Officer Report" dated December 15, 2009 (Id., pp. 10 - 15.); (6) A copy of the Memorandum of Senior Officer Joseph Smith dated December 3, 2009 (Id., p. 17.); (7) A copy of SENTRY Administrative Remedy Generalized Retrieval from January 1, 2009, through October 17, 2014 (Document No. 8-3.); and (8) A copy of unpublished cases (Document No. 8-4.).

On November 25, 2014, Petitioner filed his Motion for Voluntary Dismissal. (Document No. 9.) Specifically, Petitioner requests that his Petition be dismissed without prejudice "to save both the court's and governmental/respondent's precious & scarce resources & because a similar Civil Action is pending." (Id.) Petitioner states that he "will stipulate that this case be dismissed NOT because the Respondent's arguments are correct & NOT because there are no prevailing case law

3

& documentary proof refuting the Respondents." (Id.)

## DISCUSSION

**1.      Motion for Voluntary Dismissal:**

Federal Rule of Civil Procedure 41(a)(1)(A)(i) provides that a petitioner may voluntarily dismiss an action without a Court Order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]" Rule 41(a)(1)(B) states in pertinent part, as follows:

> Unless the notice of dismissal or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal – or state – court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The purpose of the Rule respecting voluntary dismissal "is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). "A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986). It is well established that prejudice to the defendant does not result from the prospect of a second lawsuit. See Vosburgh v. Indemnity Ins. Co. of North America, 217 F.R.D. 384, 386 (S.D. W.Va. Sep. 12, 2003). In considering a Motion under Rule 41(a)(2), the District Court should consider the following relevant, but non-dispositive, factors: "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending." Id.

In consideration of the above factors, the undersigned finds that Petitioner's Motion for Voluntary Dismissal should be denied. In the instant case, Respondent has filed a Response to Petitioner's Petition addressing Petitioner's claims and requesting that his Petition be dismissed on the merits. Subsequent to the filing of Respondent's Response, Petitioner filed his Motion for Voluntary Dismissal. (Document No. 9.) Specifically, Petitioner requests that his Petition be dismissed without prejudice "to save both the court's and governmental/respondent's precious & scarce resources & because a similar Civil Action is pending." (Id.) Petitioner states that he "will stipulate that this case be dismissed NOT because the Respondent's arguments are correct & NOT because there are no prevailing case law & documentary proof refuting the Respondents." (Id.) The undersigned finds that Petitioner's explanation for the need of dismissal is insufficient. Although Petitioner does have another Section 2241 Petition pending before the Court, the two petitions involve different issues. See Marino v. Masters, Civil Action No. 1:13-32690. Additionally, the Respondent in the instant case has been subjected to the expense of preparing his Response. At the present stage of the litigation, the undersigned finds that Respondent would be unfairly prejudiced by the voluntary dismissal of Petitioner's Petition. Based upon the foregoing, the undersigned recommends that Petitioner's Motion for Voluntary Dismissal (Document No. 9.) be denied.

**2.     Due Process Violation Pursuant to Wolff:**

In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court must consider whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process

5

of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. Amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Gaston v. Taylor, 946 F.2d at 343 (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that an inmate cannot be deprived of a protected liberty interest in good-time credits

6

without procedural due process).

When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94 S.Ct. at 2978 - 2981. BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Having thoroughly examined the record in this case, the undersigned finds no indication of error of constitutional magnitude in the disciplinary proceedings. It is clearly evident that in charging and considering Petitioner's violation of Offense Codes 222, 305, 325, and 326, prison

officials adequately adhered to the policies and procedures as prescribed in 28 C.F.R. § 541 and the Bureau of Prisons' Program Statement 5270.07. A review of the record reveals that Petitioner received all of the minimum due process safeguards set forth in Wolff. Petitioner received all documents pertinent to the charges against him, was advised of his rights, and had ample opportunity to present a defense to those charges. The record reveals that Petitioner received written notice of the charges at least 24 hours before the DHO hearing. Specifically, Petitioner received a copy of the Incident Report[3] on December 5, 2009, and the DHO hearing was conducted on December 15, 2009. Petitioner, however, contends that Respondent violated his due process rights because he did not receive a copy of his Incident Report within 24 hours after the incident occurred. The regulations merely provide that an inmate is "ordinarily" entitled to a copy of his Incident Report within 24 hours after staff becomes aware of the inmate's involvement in the incident. See 28 C.F.R. § 541.15(a)("Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, 'ordinarily' within 24 hours of the time staff became aware of the inmate's involvement in the incident.") The undersigned, therefore, finds that prison officials did

---

[3] The Incident Report dated December 3, 2009, described the incident as follows (Document No. 8-2, p. 2.):

> While conducting a random cell search of inmate Marino #14431-038 and Inmate _____ cell #231, I found $2,729.32 dollars worth of unused stamps mixed in with Inmate Marino's legal mail secured in Inmate Mario's locker. I also found in inmate Marino's locker a blue folder that contained what appeared to be a master copy of betting slips for the NFL's week 14 games, and a large amount of unused apparent gambling slips that were also secured in his locker. Upon further examination of this cell, a false wall cinder block was discovered. Behind the cinder block was approximately 10 gallons of homemade intoxicants. The intoxicants were turned over to Joe Smith, Compound Officer. Officer Smith tested the intoxicants with a level high on the testing equipment.

not violate Section 541.15(a). Furthermore, the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation. See Smith v. Cross, 2010 WL 5525178, * 5 (N.D.W.Va. June 11, 2010)("[T]he fact that the petitioner did not receive the incident report until seven days after the incident occurred, and did not have his UDC hearing within five working days does not present a denial of the petitioner's due process guarantees.") Accordingly, prison officials' failure to provide Petitioner a copy of his Incident Report within 24 hours of the incident did not result in a due process violation.

Next, the undersigned will consider Petitioner's claim that his due process rights were violated because he was denied his right to call a witness. A review of the record reveals that Petitioner was provided a "Notice of Discipline Hearing Before the DHO" on December 9, 2009. (Document No. 8-2, p. 8.) On the "Notice of Discipline Hearing Before the DHO," Petitioner indicated that he wished to call Officer Joe Smith as a witness.[4] (Id.) The DHO hearing was held on December 15, 2009, and Petitioner admitted "to the intoxicants, excess stamps and the gambling slips" (Code 222, 305, 326). (Document No. 8-2, pp. 10 - 12.) The DHO Report reveals that Petitioner "opted to proceed at his DHO hearing without calling his witness." (Id., p. 11.) The records further reveals that the DHO considered a Memorandum written by Officer Smith. (Id.) The undersigned, therefore, finds that the record is void of any evidence that Petitioner requested and was denied the right to present witnesses during his DHO hearing. Accordingly, the undersigned finds that Petitioner's above due process claim is without merit.

Third, the undersigned will consider Petitioner's claim that his due process rights were

---

[4] Petitioner indicated that Joe Smith would testify that "when he tested [the unknown liquid] it wasn't alcohol. (Document No. 8-2, p. 8.)

9

violated because Case Manager Lucas failed to act as his staff representative. A review of the record reveals that on the "Notice of Discipline Hearing Before the DHO," Petitioner indicated that he wished to have Mr. Lucas act as his staff representative. (Document No. 8-2, p. 8.) The DHO Report reveals that "[r]equested staff representative declined or could not appear but inmate was advised of the option to postpone hearing to obtain another staff representative with the result that: Inmate Marino opted to proceed at this DHO Hearing without a staff representative." (Document No. 8-2, p. 10.) The undersigned, therefore, finds that the record is void of any evidence that Petitioner requested and was denied a staff representative during his DHO hearing. To the extent Petitioner is arguing he was denied his Sixth Amendment right to counsel, his claim is without merit. Criminal defendants have the constitutional right to effective assistance of counsel through a direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); also see Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). This Sixth Amendment right, however, only applies to criminal prosecutions. See Kirby v. Illinois, 406 U.S. 682, 690, 92 S.Ct. 1877, 1882, 32 L.Ed.2d. 411 (1972). Prison disciplinary proceedings are not criminal prosecutions within the meaning of the Sixth Amendment. See Wolff, 418 U.S. at 556, 570, 94 S.Ct. at 2975, 2981. Accordingly, Petitioner's claim that prison officials violated his constitutional right to counsel during his disciplinary proceeding is without merit.

  Fourth, Petitioner contends that he was denied due process when DHO Ryan precluded Petitioner from "receiving core exculpatory material evidence at his DHO hearing proving that the critical 10 gallons of 'unknown liquid'" was not alcohol. (Document No. 1.) Petitioner explains that there was video tape evidence that the "unknown liquid" was spilled in Mohawk-B Unit. (Id.) Petitioner, therefore, argues that the "unknown liquid" was not available for testing. (Id.) In

disciplinary hearings, due process is satisfied when the findings of the disciplinary authority are supported by "some evidence." The undersigned finds that prison staff, the UDC and the DHO acted fully within their discretion in developing the evidence which resulted in the finding that Petitioner was guilty of violating Offense Code 222. The finding was supported by the evidence and the disallowance of 27 days of good conduct time was lawful and appropriate. In addition to the Incident Report and Investigation, the DHO considered the written statement from Officer Smith and Petitioner's admission. (Document No. 8-2, pp. 10 - 12.) In finding that Petitioner violated Codes 222, 305, and 316,[5] the DHO specifically stated that it relied upon the following:

> An incident report written by Officer Poirer, in which he stated that following: On 12-3-09, at approximately 0800, while conducting a random cell search of cell 231 which is housed by you and Inmate _____, he found $2,729.32 dollars worth of stamps mixed with your legal mail secured in your locker. He also found in your locker a blue folder that contained what appeared to be a master copy of betting slips for the NFL week 14 games and a large amount of gambling slips also secured in your locker. Upon further examination of your cell was a false wall cinder block was discovered. Behind the cinder block was apparently 10 gallons of homemade intoxicants. The intoxicants were tested and gave a reading of HIGH on the testing equipment.
>
> Admission by you to the DHO that the intoxicants, excess stamps and gambling slips were yours.

(Id., p. 11.) A review of Officer Smith's Memorandum reveals that on December 3, 2009, he was

---

[5] The DHO found as follows:

The DHO finds that on 12-3-09, you were charged with violating prohibited acts 222, making, possessing or using intoxicants, code 305, possession of anything not authorized (Excess stamps), code 326, possession of gambling paraphernalia and code 325, conducting a gambling pool. The evidence supports possession of intoxicants, possession of anything not authorized and possession of gambling paraphernalia; therefore codes 222, 305, 326 were upheld and code 325 was expunged.

(Document No. 8-2, p. 11.)

"sent to take a reading on possible homemade intoxicants found in Mohawk Unit Cell # 231" and both bags tested "HI" on the alcosensor 3. (Id., p. 17.) Thus, any video evidence exhibiting that the "unknown liquid" was spilled during its transfer from Petitioner's cell is irrelevant because the "unknown liquid" was tested while it was located within Petitioner's cell. The undersigned, therefore, finds that the absence of the security video footage did not violate Petitioner's due process rights because there was "some evidence" to support the DHO's decision. See Wallace v. Warden, USP Hazelton, 2013 WL 3819928 (N.D.W.Va. July 23, 2013)(although there was no review of the video footage, the "some evidence" standard was satisfied by the DHO's use of still photos and the testimony of a correctional officer); Henderson v. Commonwealth of VA, 2008 WL 204480 (W.D.Va. Jan. 23, 2008)(although petitioner claimed that the video surveillance footage would prove his innocence, the Court determined that petitioner's due process rights were not violated by the absence of additional evidence in the form of video footage because there was sufficient evidence to support the petitioner's punishment); Raynor v. Jackson, 2006 WL 33594333 (W.D.N.C. Nov. 20, 2006)(finding that petitioner's due process rights were not violated due to the disciplinary officer's failure to review video footage because there was "some evidence" to support the disciplinary officer's decision). As stated above, Petitioner was given written notice of the charges against him at least 24 hours before his hearing,[6] Petitioner received a statement of the reasons for the unfavorable decision in the form of a written report, and Petitioner had the opportunity to call witnesses in his defense. Accordingly, the undersigned finds that the disciplinary hearing comported with the due process requirements.

---

[6] The undersigned notes that Petitioner received written notice of the charges on December 5, 2009, and the DHO hearing was held on December 15, 2009. (Document No. 8-2, p. 2, 10 - 12.)

**3.     Administrative Remedy Process:**

Inmates may file an appeal with the Regional Director within 20 days from the date he receives written notice of the DHO's decision. If the inmate is dissatisfied with the Regional Director's decision, the inmate may file an appeal with the Office of General Counsel. Petitioner complains that even though he took advantage of the appeal process, the Office of General Counsel was untimely in its response. The undersigned, however, finds that "appellate review is not an element of due process." Massey v. Ballard, 2009 WL 2916889 (S.D.W.Va. Sept. 8, 2009)(citing, Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983)); also see Moses v. Bledsoe, 2004 WL 3317657, at * 4 (N.D.W.Va. Sept. 28, 2004)(stating "there is no due process right to an appeal process"). Accordingly, the undersigned finds that administrative officials did not violate due process by failing to timely respond to his appeal.

**4.     Privacy Act Claim:**

Petitioner appears to argue that prison officials violated the Privacy Act by including inaccurate disciplinary information in his central file. Specifically, Petitioner argues his central file should not include violations of Codes 222, 305, or 316, because his due process right were violated during the disciplinary hearing. As stated above, the undersigned finds that Petitioner's disciplinary hearing comported with the due process requirements and Petitioner is not entitled to have Code violations 222, 305, or 316 expunged from his record. Accordingly, Petitioner's above claim is without merit.

**5.     Conditions of Confinement:**

Petitioner alleges that prison officials improperly manipulated his custody classification resulting in a higher security level and placement in the "BOP's Diesel Therapy Program." In

considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court must consider whether the inmate is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). The Court finds that Petitioner's claims are not cognizable under Section 2241 because he is challenging the conditions of his confinement. A Section 2241 petition is used to attack the manner in which a sentence is executed, e.g., time credit calculations. Thus, a Section 2241 petition is appropriate where the prisoner challenges the fact or length of his confinement, but generally not the conditions of that confinement. See Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973); Ajaj v. Smith, 108 Fed.Appx. 743, 744 (4th Cir. 2004). "If a prisoner seeks a 'quantum change' in his level of custody such as freedom, his remedy is habeas corpus." Campbell v. Deboo, 2011 WL 1694454, * 2 (N.D.W.Va. May 4, 2011). If a prisoner, however, "seeks a different program, location, or environment, his challenge is to the condition of his confinement rather than the fact of his confinement and his remedy is under civil rights law." Id.; also see Biedrzycki v. O'Brien, 2011 WL 6748505 (N.D.W.Va. Oct. 14, 2011)(dismissing petitioner's Section 2241 claim where petitioner was "merely challenging the B.O.P.'s reliance on information in his PSR that was used to determine his custody classification and security level, neither of which affect the duration of his sentence"). In the instant case, Petitioner complains that the erroneous classification has had adverse effects upon his conditions of confinement. Therefore, the undersigned finds that Petitioner's above claim is not cognizable under Section 2241 and should be dismissed.[7]

---

[7] Briefly considering Petitioner's custody classification claim, the undersigned finds it is without merit. First, the record reveals that Petitioner failed to exhaust his administrative remedies regarding this claim. (Document No. 8-1, p. 4.) Second, Federal prisoners have no constitutional or inherent right to receive a particular security or custody classification. *See Moody v. Daggett*, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were

**PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Motion for Voluntary Dismissal (Document No. 9.), **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody (Document No. 1.) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David

---

required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . And is not otherwise violative of the Constitution." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994), *cert. denied*, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); *see also Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); *Posey v. Dewalt*, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), *appeal dismissed by*, 215 F.3d 1320 (4th Cir. 2000), *cert. denied*, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP"). Neither Section 3621(b) nor Section 3624(c) contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in a particular security classification. Title 18, U.S.C. § 3621(b) clearly vests the BOP with broad discretionary authority as to prisoners' placement and classification while incarcerated. *See* 18 U.S.C. § 3621. *See also Trowell v. Beeler*, 135 Fed.Appx. 590, 595 (4th Cir. 2005)(finding that "BOP must exercise its own independent judgment" under Section 3621(b)). The language of Section 3621(b) stating that the "Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable," is clearly permissive; the statute does not *mandate* that the BOP place a prisoner in a certain facility. Accordingly, the undersigned finds that Petitioner does not possess a constitutionally protected interest in a certain custody classification.

A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: December 10, 2014.

R. Clarke VanDervort
United States Magistrate Judge